IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | |
|---|---|
| ALVIN INDEPENDENT SCHOOL DISTRICT, § § § § | |
| Plaintiff, § | |
| v. § | CIVIL ACTION NO. G-05-678 |
| A.D. b/n/f PATRICIA F., § § | |
| Defendant. § | |

### ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

This case comes before the Court as an appeal from the decision of a hearing officer at the Texas Education Agency ("TEA") in *A.D. v. Alvin Independent School District*, Docket No. 322-SE-0505. Now before the Court are Motions for Summary Judgment by Plaintiff and Defendant. For the following reasons, Plaintiff's Motion is **GRANTED**, and Defendant's Motion is **DENIED**.

**I. Legal Standard**

The Individuals with Disabilities Education Act, 20 U.S.C. § 1415(i)(2)(A) ("IDEA"), mandates that all children with disabilities must be provided with a free appropriate education ("FAPE") and defines an FAPE as:

> Special education and related services that–
>
> (A) have been provided at public expense, under public supervision and direction, and without charge;
>
> (B) meet the standards of the State educational agency;
>
> (C) include an appropriate preschool, elementary, or secondary school education in the State involved; and
>
> (D) are provided in conformity with the individualized education

1

program required under section 1414(d) of this title.

20 U.S.C. § 1401(8). "Special education" includes "instruction conducted in the classroom, in the home . . . and in other settings." 20 U.S.C. § 1401(25). States must provide an FAPE to children with disabilities if they accept federal assistance under the IDEA. *See* 20 U.S.C. § 1412; *Cypress-Fairbanks Indep. Sch. Dist. v. Michael F. ex rel. Barry F.*, 118 F.3d 245, 247 (5th Cir. 1997).

An FAPE is one "that is specifically designed to meet the child's unique needs, supported by services that will permit him 'to benefit' from the instruction." *Michael F.*, 118 F.3d at 247-48; *see also Bonnie Ann F. ex rel. John R.F. v. Calallen Indep. Sch. Dist.*, 835 F. Supp. 340, 346 (S.D. Tex. 1993). However, in order to be eligible for the benefits provided by the IDEA, a child must (1) have a qualifying disability **and** (2) by reason thereof, need special education and related services. 20 U.S.C. § 1401(3)(A). A child must meet both requirements before he is eligible to receive special education and services.

In order to determine whether a student is a "child with a disability" under 20 U.S.C. § 1401(3)(A) and eligible for special education services, a local educational agency must conduct a full and individual evaluation ("FIE"). 20 U.S.C. § 1414(a). In conducting the FIE, the agency shall:

> (A) use a variety of assessment tools and strategies to gather relevant functional, developmental, and academic information, including information provided by the parent, that may assist in determining–
> (i) whether the child is a child with a disability; and
> (ii) the content of the child's individualized education program, including information related to enabling the child to be involved in and progress in the general education curriculum, or, for preschool children, to participate in appropriate activities;
>
> (B) not use any single measure or assessment as the sole criterion for determining whether a child is a child with a disability or determining an appropriate educational program for the child; and

> (C) use technically sound instruments that may assess the relative contribution of cognitive and behavioral factors, in addition to physical or developmental factors.

20 U.S.C. § 1414(b)(2). Upon completion of the FIE:

> (A) the determination of whether the child is a child with a disability as defined in section 1401(3) of this title and the educational needs of the child shall be made by a team of qualified professionals and the parent of the child in accordance with paragraph (5); and
> (B) a copy of the evaluation report and the documentation of determination shall be given to the parent.

20 U.S.C. § 1414(b)(4). In Texas, this determination is made through the Admission, Review, and Dismissal Process ("ARD"). *See* 30 C.F.R. § 300.343. Once a determination has been made through the ARD process, an aggrieved student or a representative acting on his behalf can request a due process hearing ("DPH") before the Texas Education Agency. 34 C.F.R. §§ 300.504-300.515.

Any party aggrieved by the outcome of a DPH may file a civil action in federal court. A district court's review of a hearing officer's decision is "virtually de novo." *Teague Indep. Sch. Dist. v. Todd L.*, 999 F.2d 127, 131 (5th Cir. 1993); *see also Michael F.*, 118 F.3d at 252. The district court must give the officer's decision "due weight," but it must nonetheless reach its own conclusion based on the preponderance of the evidence. *Michael F.,* 118 F.3d at 252 (quoting *Bd. of Educ. of Hendrick Hudson Central Sch. Dist. v. Rowley*, 458 U.S. 176, 206, 102 S. Ct. 3034, 3050-51, 73 L. Ed. 2d 690 (1982)).

## II. Factual Background

A.D.'s mother, Patricia F., requested an impartial due process hearing from TEA on May 24, 2005. She alleged that Alvin Independent School District ("AISD") violated A.D.'s right to a free appropriate public education ("FAPE") in three ways: 1) failure to identify A.D. as a student with

a disability; 2) failure to evaluate A.D. as a student with a disability; and 3) failure to place A.D. in special education. As a result of these failures, Defendant alleged that A.D. had been removed from the general education classroom for long and short time periods. (Decision, Vol. I at 1).[1] A.D. has been diagnosed with Attention Deficit Hyperactivity Disorder ("ADHD"). (Decision, Vol. I at 2).

At the time of the administrative hearing, A.D. was a fifteen-year-old student beginning the ninth grade at Alvin High School. He has attended schools in AISD from the time he was three years old. (Decision, Vol. I at 2). As a young child, A.D. participated in AISD's Early Childhood and Preschool Program for Children with Disabilities ("PPCD") on the basis of a speech impairment. *Id.* Because of his speech impairment and ADHD, A.D. qualified for special education services through the third grade. (Decision, Vol. I at 3). At that time, his mother and school personnel agreed that A.D. no longer qualified for special education services. *Id.* After his dismissal from special education, A.D. did well throughout elementary school. *Id.*

Starting in seventh grade, A.D. began to exhibit behavior problems. *Id.* He received discipline referrals for various behaviors, including hitting another student's arm, throwing spitballs, throwing pencils, using obscene language, dress code violations, verbal confrontations, and various other disrespectful and disruptive behaviors. *Id.* During his seventh grade year, A.D. was removed from the classroom and sent to In School Suspension ("ISS") several times. *Id.* He also received Saturday Adjustment and detentions. *Id.* Despite his discipline problems, A.D. passed all of his classes and met the standards required by the Texas Assessment of Knowledge and Skills ("TAKS"). *Id.*

---

[1] The Court will cite to the administrative record with an abbreviated document title ("Decision") and the volume and page number.

During eighth grade, A.D. was placed in the At Risk program at Alvin Junior High. As part of that program, a Student Success Team met regularly to consider A.D.'s performance. *Id.* at 4. A.D.'s discipline problems continued, with teachers noting inconsistency of medication, class disruption, and an alleged robbery. *Id.* Other teachers noted that his behavior was improving during periods where his medication was taken more consistently. *Id.* Following discipline problems early in the school year, school personnel met with A.D. and drafted an Academic and Behavior Contract. *Id.* The contract required A.D. to abide by certain standards which included taking medication every day, maintaining appropriate verbal behavior, following dress code, and completing assignments on time. *Id.* at 4-5. The contract also enumerated the punishment rubric that would be applied to A.D.'s behavior. *Id.* at 5. Following the contract, in November, 2004, A.D. took his medication almost every day. *Id.* He also attended each day of the school year except for three. *Id.*

Despite the contract, A.D. continued to have discipline problems throughout the school year. *Id.* at 6. These problems included taking too long at his locker, wearing his shirt untucked, throwing a pen cap across the room, arguing with teachers, being unprepared for class, generally disruptive behavior, and ultimately stealing two metal rulers from an art classroom and other property and money from a school-sponsored concession stand. *Id.* As a result of the theft, A.D. was removed from his classroom and placed in ISS for ten days. AISD eventually recommended expulsion from Alvin High School and placement in an Alternative Education Placement. *Id.*

A.D. passed the eighth grade with grades ranging from 73 to 95. *Id.* He also met the standards required on the TAKS test. *Id.* at 7. After the theft of the money from the concession stand, A.D.'s mother requested that A.D. be referred for special education. *Id.* Upon receipt of the request, AISD initiated an FIE. The FIE included several formal evaluation measures including

5

Behavior Assessment Scales, Adolescent Psychopathology Scales, Rorschach Inkblot Test, and the Woodcock Johnson III tests of cognitive abilities and intellect. *Id.* Informal evaluations included a psychological evaluation, examination by an educational diagnostician, teacher interviews, a parent interview, and a review of school files. *Id.* Information was requested from A.D.'s physicians, but was not received before completion of the FIE. *Id.*

A.D.'s cognitive abilities were found to be in the average range. *Id.* Dr. Peters, the psychologist who evaluated A.D., concluded that A.D. did have symptoms of ADHD, but that said symptoms did not prevent him from making age appropriate academic and social progress. *Id.* Ms. McDaniel, the educational diagnostician, also concluded that A.D. did have ADHD, but that he was not eligible for special education services since he was continuing to make academic progress. *Id.*

On August 25, 2005, an ARD committee met to consider the FIE and make conclusions relating to A.D.'s eligibility for special education services. *Id.* at 8. At the ARD meeting, the committee discussed Dr. Peters's evaluation. Dr. Peters read and reviewed letters from two of A.D.'s doctors who recommended special education for A.D. *Id.* Dr. Peters indicated that, while he wrote his initial report before reviewing the other doctors' reports, his opinion did not change after considering the reports. *Id.* The ARD committee ultimately decided that A.D. was not eligible for special education services, and a DPH was held before a Texas Board of Education Special Education Hearing Officer. *Id.* at 1.

The hearing officer determined that A.D. was a child with a disability and that AISD failed to provide him with an FAPE. *Id.* at 16. Additionally, she found that AISD's evaluation was incomplete since the ARD committee did not include a licensed physician as required by 19 TEX. ADMIN. CODE § 89.1040(c)(8). *Id.* at 10. She also found that A.D. was entitled to an Independent

Educational Evaluation ("IEE") because AISD failed to prove in the DPH that its FIE was adequate. *Id.* at 10. The hearing officer ordered that compensatory services including an Individualized Education Program ("IEP") be offered to A.D. after the completion of the IEE. *Id.* at 12.

## III. Analysis

*A. Failure to Evaluate A.D. as a Student with a Disability*

The hearing officer initially held that AISD failed to appropriately evaluate A.D. to determine his eligibility as a student with a disability. She cited two reasons for this finding. First, she found that AISD should have initiated the FIE and it erred by waiting until A.D.'s mother requested it. *Id.* at 10. The hearing officer cites 19 TEX. ADMIN. CODE § 89.1011 for this conclusion. However, that section does not support the officer's conclusion. Section 89.1011 states that a school district must provide an FIE if a referral is initiated and the student has continued difficulty in the general classroom. It further provides that the referral may be initiated by school personnel **or** the student's parent. *See* 19 TEX. ADMIN. CODE § 89.1011. In this case, AISD complied with A.D.'s mother's request for an FIE.

The hearing officer also found that the FIE was lacking since it did not include a licensed physician. The Texas Administrative Code provides that in an evaluation of a child with ADHD "the multidisciplinary team that collects or reviews evaluation data in connection with the determination of a student's eligibility . . . must include a licensed physician." 19 TEX. ADMIN. CODE § 89.1040(c)(8). Though AISD's initial investigation did not include thorough reports from a licensed physician, since they were not provided in time, the ultimate decision made by the ARD committee included an evaluation of the reports of A.D.'s psychiatrist and pediatrician. (ARD Report, Vol. II at 524-25). Accordingly, AISD met the requirement of § 89.1040(c)(8), and the hearing officer's

finding to the contrary is without support in the record.

*B. Failure to Identify A.D. as a Student with a Disability*

The hearing officer found that A.D.'s behavior was preventing him from making appropriate educational progress and that this justified the implementation of a special education program. (Decision, Vol. I at 12). This conclusion is against the weight of the evidence in the record and is not supported by the law.

As noted above, in order for a child to be a "child with a disability" the child must (1) have a qualifying disability **and** (2) by reason thereof, need special education and related services. *See* 20 U.S.C. § 1401(3)(A). There is no dispute that A.D.'s ADHD is a qualifying disability. Among the disabilities listed in § 1401(3)(A) is "other health impairment." ADHD qualifies as an "other health impairment." *See* 34 C.F.R. § 300.7(c)(9). However, there is adamant disagreement as to the second prong of the definition. Specifically, AISD maintains that A.D. does not "need special education and related services" **because of** his ADHD. A.D.'s mother and the hearing officer disagree.

In determining that A.D. needs special education and related services, the hearing officer relied on the testimony of A.D.'s psychiatrist and pediatrician. A.D.'s pediatrician and psychiatrist both confirmed that A.D. suffers from ADHD. Dr. Kazmi, A.D.'s pediatrician, stated that his recommendation for special education services was based on his opinion that A.D. could not reach his full potential in the current environment and that A.D. would likely suffer from self-esteem issues due to his poor behavior in school. (DPH Transcript, Vol. III at 114-15). While Dr. Kazmi's recommendations are probably medically sound, they do not meet the legal requirement for showing a special education need. The IDEA was enacted to guarantee a "basic floor of opportunity."

*Rowley*, 458 U.S. at 200, 102 S. Ct. at 3047. While healthcare providers and parents may hope to maximize the potential of a particular student, school districts are not and cannot be required to maximize the potential of every student. *See Austin Indep. Sch. Dist. v. Robert M.*, 168 F. Supp. 2d 635, 640 (W.D. Tex. 2001). Additionally, Dr. Kazmi himself admits that his concerns about self-esteem are very general and do not necessarily apply to A.D. (DPH Transcript, Vol. III at 114-15). Concerns that have not even been shown to exist in the particular student being evaluated are also very weak (if not totally irrelevant) support for showing a special education need. Additionally, Dr. Kazmi's concerns are expressly contradicted by A.D.'s teachers who say that A.D. has many friends, is a popular student, and is a leader among his peers. (DPH Transcript, Vol. III at 350-51, 402-404).

Dr. Rasheed, A.D.'s psychiatrist for the month preceding the ARD committee meeting, also bases her opinion that A.D. needs special education on a desire for A.D. to achieve his maximum potential. *See id.* at 53. While a wholly lofty aspiration for this or any child, again, this is an inappropriate measure of educational adequacy. Additionally, Dr. Rasheed did not talk to any school personnel and only looked at those school records provided by A.D.'s mother. Dr. Rasheed also relied on inaccurate statements made by A.D.'s mother and unsupported by the record. Specifically, Dr. Rasheed was under the impression that A.D. was failing all of his classes and she was unaware that A.D. had successfully mastered all portions of the TAKS test at the time she wrote her report. *See id.* at 51, 67.

The hearing officer's reliance on the testimony and reports of Drs. Kazmi and Rasheed was seriously misplaced. Their testimony is simply not supported by the law or the facts. Additionally, the hearing officer did not give the requisite consideration to A.D.'s teachers and other school personnel, all of whom said that A.D. did not need special education services to be successful.

(ARD Report, Vol. II at 523-25). The opinions of these educational professionals are in conformity with the facts that A.D. was passing his classes and mastering the TAKS test; critical indications that A.D. was receiving appropriate educational benefit from AISD. A.D.'s behavior problems simply do not provide the basis for an educational need in the face of his otherwise appropriate educational and social progress. *See Robert M.,* 168 F. Supp. 2d at 640 (finding no eligibility under IDEA where child's difficulties were the result of skipping classes, refusing to do homework, smoking dope, and neglecting to take his ADD medication, and not the result of a disability). Since the hearing officer's decision that A.D. needed special education was incorrect, A.D. is not a "child with a disability," and AISD's failure to provide special education services was not inappropriate.

C. *Failure to Place A.D. in Special Education*

Since A.D. is not a "child with a disability" as defined by 20 U.S.C. § 1401(3)(A), he is not eligible for special education services, and AISD has no legal obligation to provide them. As analyzed above, their failure to do so is supported by the facts of this case and the law applicable to them.

D. *Attorney's Fees*

20 U.S.C. § 1415(i)(3)(B) authorizes the Court to award, in its discretion, attorney's fees to the parents of a child with a disability who is a prevailing party. A.D.'s mother has asked the Court to award reasonable attorney's fees because she prevailed on a significant issue at the hearing. A.D.'s mother has not prevailed in this action, though, and for that reason the Court respectfully declines to award her attorney's fees. Each Party is to bear its own costs, expenses, and attorney's fees incurred herein to date.

**IV. Conclusion**

The Court deeply sympathizes with the angst and frustration of A.D.'s mother. Raising a child with attitudinal and/or behavioral problems is unquestionably a tremendous burden, and the Court commends his mother for her compassionate practical involvement and her vigorous, tenacious, and vociferous advocacy on behalf of her child. However, the Court must balance its admiration with its equal concern for the burdens of school taxpayers and the practical limitations of school districts to provide a common educational experience tailored to the maximal individual needs of countless children. As regrettable as this reality is, the State is simply not obligated to design and implement a perfect education for every child. No child receives all the educational services that might be desired. This is the reality of the State's limited budget and, as commonly diagnosed as ADHD is, allowing special education for every child so afflicted would instantly exhaust the resources of any school district.

For the above-stated reasons, Plaintiff's Motion for Summary Judgment is hereby **GRANTED**, and Defendant's Motion for Summary Judgment is respectfully **DENIED**. The decision of the hearing officer that Plaintiff denied A.D. a free appropriate education and that he is a child with a disability entitled to special education services is **VACATED**. Each Party is to bear its own taxable costs, expenses, and attorney's fees incurred herein to date. A Final Judgment will be issued contemporaneously with this Order.

**IT IS SO ORDERED.**

**DONE** this 6th day of October, 2006, at Galveston, Texas.

_____
Samuel B. Kent
United States District Judge